UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60408-BLOOM/Valle

REICHEN KUHL, *as owner of the 2002 28-foot Four Winns 280 Horizon motorboat, HIN GFNCE005F102*,

    Petitioner.

_____/

### ORDER ON CLAIMANT SEVEN LXXVII, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Claimant Seven LXXVII, LLC's ("Seven") Motion for Partial Summary Judgment, ECF No. [149] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting memoranda, ECF Nos [158], [166]; the record in this case; the applicable law; and is otherwise fully advised. For the reasons that follow, the Motion is denied.

### I.  BACKGROUND

This case arises because of a January 2021 fire that broke aboard Reichen Kuhl's ("Kuhl") motorboat (the "Limitation Vessel"), which had docked at Bahia Mar Marina to fuel. When it caught on fire, the Limitation Vessel drifted into the M/Y *W*, a 189' Feadship owned by Seven. The *W* spent weeks in a repair yard, which Seven claims resulted in lost charter income of between $1.2 million and $2 million.

On February 22, 2021, Kuhl, as title owner of the Limitation Vessel, initiated this action for exoneration from or for limitation of liability pursuant to 46 U.S.C. §§ 30501, *et seq.*, Supplemental Rule F, and Local Supplemental Rule F for all claims arising out of the fire incident. ECF No. [1]. Seven filed a third-party claim against Defendants Suntex Marina Investors, LLC

("Suntex") and Rahn Marina, LLC, Bahia Mar SMI OPCO Series ("OPCO"), ECF No. [45], seeking compensation for physical damages to the *W* and lost charter income.

Seven alleged, and Suntex and OPCO admitted, that Suntex "is the owner of Bahia Mar Marina" and OPCO "is the operator of Bahia Mar Marina." ECF Nos. [45] ¶¶ 3–4, [112] ¶¶ 3–4. Seven raised four claims, two for negligence and two for gross negligence, against Suntex and OPCO, respectively. ECF Nos. [45] ¶¶ 13–30. Suntex and OPCO raised as affirmative defenses the exculpatory clauses within Seven's Boat Storage/Dockage License Agreement ("Agreement"). ECF No. [112] at 6–7; *see* Agreement at ECF No. [112-1].

Seven "seeks partial summary judgment that [Suntex] is not entitled as a matter of law to any contractual defense based upon the exculpatory language found within the [Agreement]." ECF No. [149] at 1. This is the only issue raised in Seven's Motion for Partial Summary Judgment.

## II.   MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.[1]

On August 28, 2020, "David MacNeil/Seven LXXVII LLC," on the one hand, and "Rahn Marina, LLC, Bahia Mar SMI Series, a registered series of a Delaware limited liability company ('Company'), and Rahn Marina LLC, Bahia Mar SMI Opco Series, a registered series of a Delaware limited company ('OpCo')," on the other hand, entered into the Agreement. ECF No. [112-1] at 1. Company and OPCO were collectively referred to as "Licensor" under the Agreement. *Id.* Company and OPCO are both wholly-owned subsidiaries of Suntex. ECF No.

---

[1] Seven filed a Concise Statement of Material Facts in Support of Motion for Partial Summary Judgment. ECF No. [150]. Suntex filed a Statement of Material Facts in Support of its Response to Seven's Motion for Partial Summary Judgment, which included additional facts. ECF No. [163]. Seven did not file a Reply Statement addressing those additional facts.

[163] ¶ 13, [163-2] at 5.

> Section 2 of the Agreement stated:
>
> LICENSOR'S RACKS, SLIPS AND ASSOCIATED MARINA FACILITIES ARE TO BE USED BY OWNER AT OWNER'S SOLE RISK. THE FOLLOWING PROVISIONS IN THIS SECTION 2 ARE LIMITATIONS OF LIABILITY - BY INITIALING BELOW, THE OWNER, FOR ITSELF AND ON BEHALF OF ITSELF AND OWNER'S GUESTS, FAMILY MEMBERS, EMPLOYEES, REPRESENTATIVES, AND AGENTS, SPECIFICALLY ACKNOWLEDGE(S) THAT **LICENSOR AND OTHER ENTITIES** MENTIONED BELOW ARE LIMITING THEIR LIABILITY AS IT RELATES TO ANY CLAIM(S) AS SET FORTH BELOW, THIS MEANS THAT LICENSOR AND OTHER ENTITIES MENTIONED BELOW ARE LIMITING THEIR LIABILITY, INCLUDING THEIR LIABILITY FOR SOME AMOUNTS OF DAMAGE ARISING FROM THEIR ORDINARY NEGLIGENCE, WHETHER PERSONAL INJURIES, PROPERTY DAMAGE, OR ANY OTHER DAMAGES ARISING IN ANY WAY OR PART FROM THE ORDINARY NEGLIGENCE OF LICENSOR OR OTHER ENTITIES MENTIONED BELOW. OWNER, FOR ITSELF AND ON BEHALF OF ITSELF AND OWNER'S GUESTS, FAMILY MEMBERS, EMPLOYEES, REPRESENTATIVES AND AGENTS, HEREBY RECOGNIZES AND UNDERSTANDS THAT OWNER HAS OPTIONS WHETHER TO AGREE TO STAY AT THE MARINA PREMISES OR ENTER INTO THIS AGREEMENT WITH LICENSOR AND THAT OWNER IS FREELY AND VOLUNTARILY ENTERING INTO THIS AGREEMENT IN CONNECTION WITH OWNER'S PURSUIT OF RECREATIONAL BOATING ACTIVITIES AND THE STORAGE OF PLEASURE.

ECF No. [112-1] at 2 (emphasis added).

> Section 2.1 of the Agreement stated:
>
> OWNER, ON BEHALF OF ITSELF AND OWNER'S GUESTS, FAMILY MEMBERS, EMPLOYEES, REPRESENTATIVES, AND AGENTS, RELEASES AND WAIVES ANY AND ALL CLAIMS FOR ANY AND ALL DAMAGES IN EXCESS OF THE RENT AND OTHER FEES PAID BY OWNER HEREUNDER AGAINST COMPANY AND OPCO AND THEIR RESPECTIVE MANAGEMENT, **AFFILIATES**, OFFICERS, EMPLOYEES, REPRESENTATIVES, AND AGENTS FOR ANY LOSS (INCLUDING THEFT AND VANDALISM), DAMAGE OR DESTRUCTION BY FIRE, WINDSTORM, WATER, OR OTHERWISE TO ANY VESSEL, ANY VESSEL'S EQUIPMENT, OR PERSONAL EFFECTS ON ANY VESSEL, OR IN OR AROUND LICENSOR'S RACKS, SLIPS AND ASSOCIATED MARINA FACILITIES, WHETHER IN CONTRACT OR IN TORT, <u>EVEN IF SUCH LOSS, DAMAGE OR DESTRUCTION IS CAUSED IN WHOLE OR IN PART BY THE ORDINARY</u>

<u>NEGLIGENCE OF COMPANY OR OPCO OR THEIR RESPECTIVE MANAGEMENT **AFFILIATES** OFFICERS EMPLOYEES OR AGENTS IT BEING ACKNOWLEDGED THAT THE FOREGOING RELEASE WAIVER DOES NOT INCLUDE DAMAGE CAUSED SOLELY BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COMPANY OR OPCO OR THEIR RESPECTIVE MANAGEMENT, AFFILIATES, OFFICERS, EMPLOYEES OR AGENTS)</u>.

*Id.* (emphasis added).

In addition, Section 2.4 of the Agreement stated:

THIS SECTION 2 REFLECTS AN AGREED CONTRACTUAL ALLOCATION OF RISKS BETWEEN THE PARTIES WHEREBY OWNER AGREES TO LOOK IN THE CIRCUMSTANCES ABOVE TO OWNER AND OWNER'S OWN INSURER AS TO RISKS ASSOCIATED WITH THE USE OF LICENSOR'S RACKS, SLIPS, BOAT LIFTS AND ASSOCIATED MARINA FACILITIES, EXCEPT TO THE EXTENT OF INJURY OR DAMAGE CAUSED SOLELY BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COMPANY OR OPCO OR THEIR RESPECTIVE MANAGEMENT, **AFFILIATES**, OFFICERS, EMPLOYEES OR AGENTS.

*Id.* at 3 (emphasis added).

### III.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir.

2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree

about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion.

## IV.  DISCUSSION

"Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording [is] so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away." *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260–61 (Fla. 2015). Seven argues that the Agreement lacks "clear and unequivocal wording that could lead an ordinary and knowledgeable person to

know that it was contracting away rights as against a non-party to the Agreement, to wit, [Suntex]." ECF No. [149] at 3. Seven contends that Suntex is not explicitly mentioned in the Agreement, and that the terms "affiliate" or "management" are not defined. *Id.* Suntex responds that the Company and OPCO clearly and unequivocally relieved themselves and their affiliates from liability from ordinary negligence. ECF No. [158] at 6. Suntex also submits that it is covered by the exculpatory clauses because, as the parent of the Company and OPCO, it is an "affiliate." *Id.* at 7–9. In its Reply, Seven maintains that "a non-ambiguous meaning in the context of normal contractual language is not sufficient in an exculpatory clause because no ordinary knowledgeable person can know which un-named parties are being relieved of the obligation of acting with due care." *Id.* at 166 at 2.

"[I]n determining whether a contract is ambiguous, the words should be given their natural, ordinary meaning, and ambiguity does not exist simply because a contract requires interpretation or fails to define a term." *Calvert v. Safeco Ins. Co. of Illinois*, 841 Fed. Appx. 169, 172 (11th Cir. 2021). "To determine the ordinary meaning of an undefined statutory term, we often look to dictionary definitions for guidance." *Spencer v. Specialty Foundry Products Inc.*, 953 F.3d 735, 740 (11th Cir. 2020) (internal quotation marks omitted). Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, *parent*, or sibling corporation." Affiliate, Black's Law Dictionary (11th ed. 2019) (emphasis added). This meaning is well understood and employed by courts in many contexts. *See, e.g.*, *Tyman v. Ford Motor Co.*, 521 F. Supp. 3d 1222, 1228 (S.D. Fla. 2021) ("parent companies have frequently compelled arbitration where the parent company did not sign the agreements but qualified as an 'affiliate' referenced in the arbitration provisions"). Indeed, as aptly put by one Court: "[t]hat the term 'affiliate' has a common meaning requiring no exposition is

reinforced by the fact that the terms 'affiliate' and 'affiliates' appear over 240 times in a wide range of Florida statutes, yet the terms merit explicit definitions in fewer than 20 sections of the state code." *League of Women Voters of Florida v. Browning*, 575 F. Supp. 2d 1298, 1317 (S.D. Fla. 2008) (Altonaga, J.).

Here, the exculpatory clauses clearly and unambiguously extended to affiliates of the Company and OPCO, such as Suntex. *See* ECF No. [112-1] at 2–3. The Company and OPCO are wholly-owned subsidiaries of Suntex, ECF No. [163] ¶ 13, [163-2] at 5, and thus affiliated with Suntex. *See, e.g.*, *Tyman*, 521 F. Supp. 3d at 1228. Notably, Seven was well aware that Suntex was the owner of Bahia Mar Marina, while OPCO managed the Marina, given that Seven alleged as much in its Complaint. *See* ECF Nos. [45] ¶¶ 3–4. Moreover, although, as Seven points out, Florida law disfavors exculpatory clauses, such clauses are nonetheless interpreted under the same contract principles. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166 (11th Cir. 2009) (prefacing analysis of exculpatory clause by stating that "general Florida contract law would apply"). Seven presents no authority, and independent research revealed none, standing for the proposition that the term "affiliate" should be defined differently within exculpatory clauses than in any other context.

Seven relies exclusively on *Hackett v. Grand Seas Resort Owner's Association Inc.*, 93 So. 3d 378, 379 (Fla. 5th DCA 2012), which addressed an exculpatory clause stating that "Management . . . will not be responsible for accidents or injury to guest or for the loss of money, jewelry or valuables of any kind." *Hackett* held that the exculpatory clause was unenforceable by the Grand Seas Resort Owner's Association because "Management . . . is never defined within the body of the document" and "nowhere is the appellee, Grand Seas Resort Owner's Association, recognized, nor is it specifically identified with the term." *Id.* at 380–81. *Hackett*, however, is

distinguishable. In that case, the term "Management" was not tied to any particular entity, so it was impossible to know whether "Management" referred to the homeowner's association. By contrast, Seven released the Company, OPCO, and its "affiliates," commonly understood to include parent companies. Unlike the term "Management" in *Hackett*, the term "affiliates" is not untethered and devoid of discernable meaning.

In sum, the Agreement is unambiguous as to what entities Seven relieved from liability for ordinary negligence, and thus the exculpatory clauses are enforceable.

## V.   CONCLUSION

For the foregoing reasons, the Motion, **ECF No. [149],** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 25, 2022.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record